AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

*December 08, 2016*

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Bennie Charles Phillips, Jr. | ) | Case No. |
| | ) | **H 16-1755M** |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ December 7, 2016 _____ in the county of _____ Harris _____ in the
_____ Southern _____ District of _____ Texas _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1951(a) | Conspiracy to Interfere with Commerce by Robbery |
| Title 18, United States Code, Sections 924(c) and 2 | Aiding and Abetting Use and Carrying of a Firearm in Furtherance of a Crime of Violence |

This criminal complaint is based on these facts:

see attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Jeffrey M. Coughlin
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 12\8\16 _____

_____
*Judge's signature*

City and state: _____ Houston, Texas _____

Dena Palermo, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF COMPLAINT

I, JEFFREY M. COUGHLIN (hereafter Affiant), being duly sworn, do hereby depose and state:

1.    I am a Special Agent (SA) of the United States Federal Bureau of Investigation (FBI) and an officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses enumerated in Title 18, United States Code, Section 2516.

2.    I have been a Special Agent with the FBI for two and one half years. I am currently assigned to the Houston Field Office, Violent Crime Task Force. My primary duties are the investigation of various violent crimes, including, bank, commercial business, and armored car robberies.  During my law enforcement career, I have investigated criminal matters relating to such violent crimes, bank robberies, commercial robberies, armored car robberies, violent fugitives, drug trafficking, and crimes against children. Through these investigations as well as my previous training, I have become familiar with the patterns of activity regarding robbery suspects and the methods they employ to plan, coordinate, and conduct robberies.  I have conducted or participated in surveillances, the execution of search warrants, reviews of recorded conversations, and debriefings of defendants, witnesses and informants, and others with knowledge of those

1

involved in the commission of violent crimes.

2.   This affidavit is being submitted in support of a criminal complaint and arrest warrant.   Your Affiant states that there is probable cause to believe that Bennie Charles PHILLIPS, Jr. has committed the offenses of Conspiracy to Interfere with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951(a), and Aiding and Abetting Use and Carrying of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c) and 2.

3.   Since March 18, 2016, FBI has been conducting an investigation into a robbery crew recruited, led and managed by Redrick Jevon BATISTE. BATISTE's robbery crew primarily targets armored cars as they are servicing and replenishing United States currency in ATMs located outside of banks, a process which may take up to two hours per bank. As the courier exits the armored car with a sealed box containing the currency for the ATM, the courier is assassinated by BATISTE, or a member of BATISTE's robbery crew, who fires a rifle from a concealed position some distance away, believed to be located inside a vehicle. Once the courier is down, another member of the crew drives a vehicle to the area of the ATMs, and a third member of the crew exits the vehicle, grabs the box containing the currency, and then re-enters

the car. The car containing the currency, and the vehicle from which the shots were fired, both exit the area.

## March 18, 2016 Murder and Robbery

4.    On March 18, 2016, at the J.P. Morgan Chase Bank, located at 5607 Airline, Houston, Texas, in the Southern District of Texas, Melvin Moore, a Loomis armored transport security courier was murdered while replenishing an ATM with United States currency. Surveillance video revealed that the shots which killed Moore were fired from some distance, after which a black sedan pulled up.  A black male exited the rear of the vehicle and attempted to reach the box containing the currency.  However, in his last act, Moore, who had not yet expired, pulled his service pistol and fired at the black male, causing him to re-enter the sedan without obtaining the currency.  Moore eventually succumbed to his wounds later that same day.

## August 29, 2016 Murder and Robbery

5.    On August 29, 2016, bank and armored car surveillance video showed at approximately 5:58pm, outside of the Wells Fargo Bank at 13201 Northwest Freeway, in Houston, Texas, in the Southern District of Texas, David Guzman, a Loomis armored transport security courier was murdered while replenishing an ATM with United States currency. Surveillance video again revealed that the shots which killed Guzman were fired from some distance.  After Guzman was down, a blue Toyota sedan pulled up and a black male exited

3

the vehicle. The black male grabbed the container with the currency in it, re-entered the Toyota, and the vehicle exited the area. The container had $120,000 inside of it.

6.    On or about September 2, 2016, detectives with HPD conducted an open records request on BATISTE, learning that BATISTE resided at 1351 Tarberry Road, Houston, Texas.  Also, registered in his name at that address was a black Jeep Wrangler.

7.    A search of surveillance videos from surrounding businesses for video recorded at the time of the murder/armed robbery occurring on August 29, 2016 was conducted.  Agents' attentions were drawn to the video of the Extended Stay America located directly across the street from the scene of the robbery and Guzman's murder. Depicted in the video was a white Toyota 4-Runner which arrived at approximately 2:54pm, and left at approximately 5:57pm, immediately after the murder/armed robbery took place[1]. During the three-hour period that the vehicle was parked in the Extended Stay America lot, the video shows that no one exited or entered the vehicle.

8.    On September 7, 2016, officers with the HPD North Tactical unit located in the parking lot of The Meadows on Blue Bell a white Toyota 4-Runner, matching the description of the vehicle seen in the Extended Stay America video, and similar in

---

[1] The times on the bank surveillance video and the Extended Stay America video are approximate.   The white SUV left the parking lot immediately after the robbery was concluded.

appearance to the Nissan Pathfinder described by the CS.   The license plate on the rear of the vehicle was stolen. The license plate on the front of the vehicle was stolen. Moreover, neither of these license plates matched.   The vehicle itself was also listed as stolen based on the VIN number. The owner of the vehicle is Budget Rent-a-Car. The vehicle was reported stolen on June 12, 2015, by a person who had legally rented the vehicle.   Officers noted that in the rear hatch door of the vehicle, adjacent to the license plate, an aftermarket port hole had been cut out.   This port hole was large enough to accommodate a rifle with a scope.

9.   Since September 8, 2016, surveillance has shown that the Jeep Wrangler registered to BATISTE has regularly traveled from 1351 Tarberry Road, BATISTE's residence, to The Meadows on Blue Bell.   During these times, the surveillance established on the Toyota 4-Runner revealed that the Toyota 4-Runner was moved to another parking space within the same parking lot.   This occurred on September 14, 2016, at 6:45am, September 27, 2016, at 1:00am, October 8, 2016, at 1:55am, October 12, 2016, at 11:00pm, October 21, 2016, at 8:30pm, October 31, 2016, at 1:37am, November 3, 2016, at 12:15am, and November 7, 2016, at 8:10pm. Officers and agents believe that this movement, and the times during which it is conducted, is meant to conceal BATISTE's identity and to avoid the vehicle being identified by apartment management as being stolen or abandoned and towed away. Each time after the Toyota 4-Runner

has been moved, surveillance showed the Jeep Wrangler return to BATISTE's residence at 1351 Tarberry Road.

10.  On or about October 21, 2016, at approximately 8:30pm, surveillance on BATISTE's Jeep Wrangler showed the vehicle traveling to The Meadows on Blue Bell.  Immediately thereafter, surveillance on the Toyota 4-Runner indicated the vehicle leaving the apartment parking lot and traveling to a gas station, and then to BATISTE's residence at 1351 Tarberry Road. Surveillance showed the vehicle being pulled into the garage of the residence and the door being closed behind it.  Surveillance established that the vehicle was left running in the garage for approximately 30 minutes.  Surveillance indicated that the Toyota 4-Runner was returned to The Meadows on Blue Bell at approximately 9:30pm, and then BATISTE's Jeep Wrangler returned to his residence.

## Amegy Bank, 400 North Sam Houston East, Houston, Texas

11.  On November 21, 2016, from approximately 8:00am to 11:00am, physical surveillance showed that HILL was in the vicinity of the Amegy Bank located at 400 North Sam Houston Parkway East, Houston, Texas.

12.  On November 21, 2016, from approximately 11:30am to 5:00pm, physical surveillance indicated that BATISTE was in the vicinity of the Amegy Bank at 400 North Sam Houston Parkway East.

13.   On November 22, 2016, from approximately 8:00am to
10:00am, surveillance indicated that HILL was in the vicinity of
the Amegy Bank located at 400 North Sam Houston Parkway East.

14.   On November 22, 2016, from approximately 11:10am to
6:00pm, surveillance indicated that BATISTE was in the vicinity of
the Amegy Bank at 400 North Sam Houston Parkway East.

15.   On November 23, 2016, from approximately 8:20am to
1:20pm, surveillance indicated that BATISTE was in the vicinity of
the Amegy Bank at 400 North Sam Houston Parkway East. At
approximately 11:30am, a Loomis armored car arrived at the Amegy
Bank and serviced the stand alone ATM and motor bank area, both of
which are located on the first floor of the Amegy Bank parking
garage. The armored car then travelled to the main bank building
and serviced the main bank. BATISTE's Jeep Wrangler was parked in
direct line of sight of the armored car while the ATM and motor
bank were serviced. The Jeep Wrangler then moved to the main bank
parking area and was in direct line of sight of the armored car
while the main bank was serviced.

16.   On November 23, 2016, at approximately 12:12pm, while
the Loomis armored car was still servicing the Amegy Bank located
at 400 North Sam Houston Parkway East, surveillance observed a
black Infinity Q56 registered to HILL in the parking lot across
the street from the Amegy Bank. The Infinity Q56 remained in the
parking lot until the Loomis armored car left the Amegy Bank. The

Infiniti Q56 then travelled to the Greenspoint Mall parking lot where it parked next to BATISTE's Jeep Wrangler.

17.   On November 23, 2016, at approximately 12:30pm, officers identified an older model Chevrolet van with Ohio license plates travelling towards the area at the Greenspoint Mall parking lot occupied by the Jeep Wrangler known to be operated by BATISTE and the Infiniti Q56 registered to HILL. The van parked close to the Jeep Wrangler and the Infiniti Q56. Officers noted that the driver of the van had the same physical characteristics as POLK. Due to the Ohio license plates and the distinct exterior on the van, officers recognized this van as the same van that was located at 1351 Tarberry, BATISTE's residence, on October 5, 2016. This van was also co-located at 782 Enterprise Street, Houston, Texas with BATISTE's Jeep Wrangler on October 7, 2016. A driver's license records check indicated that POLK was issued a Texas driver's license on April 24, 2014 where his listed address was 782 Enterprise Street, Houston, Texas.

18.   After the meeting at the Greenspoint Mall, surveillance observed the three vehicles return to the vicinity of the Amegy Bank and travel throughout the streets and neighborhoods near the bank, appearing to be identifying ingress and egress routes from the bank.

19. On November 23, 2016 video surveillance was established at the Amegy Bank located at 400 North Sam Houston Parkway East, Houston, Texas.

20. On November 28, 2016, at approximately 1:15pm, surveillance observed POLK in the vicinity of the Amegy Bank in the older model Chevrolet van that he was previously seen in at Greenspoint Mall on November 23, 2016.

21. On November 29, 2016, in case number 4:16-MC-2777, United States District Judge Keith P. Ellison, of the Southern District of Texas, signed an order authorizing the interception of a cellular device bearing phone number 281-630-0305, utilized by Redrick Jevon BATISTE. Redrick Jevon BATISTE, Marc Anthony HILL, John Edward SCOTT, and Nelson Alexander POLK, were named interceptees.

22. According to records received from Enterprise Rent-a-Car, on November 29, 2016, Lavette Muhammad rented a black 2017 Jeep Cherokee, Texas license number HWP3122, Vehicle Identification Number 1C4PJLDB2HW522727, hereafter TARGET VEHICLE, from the Enterprise Rent-a-Car located at 3777 Southwest Freeway, Houston, Texas.

23. On November 30, 2016, at approximately 10:30am, a conversation was intercepted between BATISTE and HILL. HILL stated, "Commissary pulling up right now." BATISTE responds, "be light with it. I meant to get you today. I'm going to get them

9

burners for these boys so we can fade off these lines. Your phone got space in it?" HILL replies, "Yea, I fixing to take care of it right quick." BATISTE tells HILL, "Put it all there so I can see exactly where you at, you at the cool spot or the apartment." HILL tells BATISTE, "At the apartment. He pulled in the opposite way." BATISTE states, "It's no biggie just put your recorder on and document everything."

24.   Based upon my training, experience and knowledge of this investigation, when HILL stated, "Commissary pulling up right now," he is telling BATISTE that the armored car has arrived at the Amegy Bank, 400 North Sam Houston Parkway East, Houston, Texas, to service the outside ATMs. This is further corroborated by surveillance officers who were at that location and verified the arrival of the armored car at that time. BATISTE responded, "be light with it. I meant to get you today. I'm going to get them burners for these boys so we can fade off these lines. Your phone got space in it?" BATISTE is telling HILL that he had intended to get HILL a burner phone that day with more memory in it. When HILL replied, "Yea, I fixing to take care of it right quick," he is telling BATISTE that he has enough memory in his phone to record the routine of the armored car. When BATISTE told HILL, "Put it all there so I can see exactly where you at, you at the cool spot or the apartment," he is telling HILL to record everything so that he can see exactly what the routine is. When BATISTE asks HILL if

10

he is at the cool spot or the apartment, BATISTE is acknowledging that they have two spots in the vicinity of the Amegy Bank from which they conduct surveillance of the ATMs. This was further corroborated by surveillance officers who were present at the Amegy Bank and did not see HILL. When HILL told BATISTE, "At the apartment. He pulled in the opposite way," he is telling BATISTE that he is at the apartments directly behind and in the line of sight of the bank. He further informs BATISTE of the route taken by the armored car when it pulled up to the ATMs. When BATISTE stated, "It's no biggie just put your recorder on and document everything," he is telling HILL not to worry about the route HILL thought the armored car would take, just make sure that he records accurately the route that it did take.

25. On November 30, 2016, at approximately 1:17pm, a conversation was intercepted between BATISTE and PHILLIPS. During the conversation BATISTE stated, "I'm – I'm still struggling, man. I got my little whip. I got my little whip before I was supposed to. Man, that bitch is so nice, you know what I'm saying, I couldn't tell them don't do what they was doing. That motherfucker so nice I'm having – I'm having trouble trying to – trying to copy this motherfucker, man. So, I just got my thinking cap on. I got a few more options so before a nigga panic and try to swap it out and get another one, I'm a – I'm going to try some more things with this little motherfucker, man. I – hey, but it – it's mint. Man,

that – that – that – that – dough be on the way, man. I – hey, but yeah, it – it's mint bro. Ju – the way – because I told my nigga, I was like shit today or tomorrow. Today or tomorrow. I said pay attention all day, bro, don't be sleeping. This is a boring job but niggas doze off. I said man don't be sleeping, dog because today – today it might be the day and if it ain't today it's tomorrow, man nigga. And nigga hit me fifteen minutes after I told you, I said man we got to be on point from woopwoop to woopwoop. . . . That nigga hit me fifteen minutes after that. Say commissary – commissary here. I said uh-huh. So with that being said, uh, I mean I'm over here fucked up, [unintelligible] I ain't lying. It's just like – it's just like a – all of my other missions, man. I couldn't even, uh-man, I got to take – I got to have two shots every night, man, just to go to bed, bro."

26.   Based upon my training, experience and knowledge of this investigation, when BATISTE says, "I got my little whip before I was supposed to," BATISTE is stating that he received his new vehicle, the TARGET VEHICLE, before he had intended to. (It should be noted that BATISTE was driving the TARGET VEHICLE at the time of this conversation.) When BATISTE states, "Man, that bitch is so nice, you know what I'm saying, I couldn't tell them don't do what they was doing," he is speaking in reference to the deal that he got at Enterprise Rental when he rented the vehicle through a third party. When BATISTE states, "That motherfucker so nice I'm having

- I'm having trouble trying to - trying to copy this motherfucker,
man. So, I just got my thinking cap on. I got a few more options
so before a nigga panic and try to swap it out and get another
one, I'm a - I'm going to try some more things with this little
motherfucker, man," he is referencing his failing efforts to copy
one of the keys for the TARGET VEHICLE so that after the vehicle
is returned to the rental agency, he can steal the vehicle from
the next renter using the genuine key that he wants to replace
with a false key. When BATISTE states, "Man, that - that - that -
that - dough be on the way, man. I - hey, but yeah, it - it's mint
bro. Ju - the way - because I told my nigga, I was like shit today
or tomorrow. Today or tomorrow. I said pay attention all day, bro,
don't be sleeping. This is a boring job but niggas doze off. I
said man don't be sleeping, dog because today - today it might be
the day and if it ain't today it's tomorrow," he was stating that
the time for the robbery of the armored vehicle was getting near
and that there would be a large amount of money taken in that
robbery. He was also stating that he knew that doing surveillance
of the bank is boring, but that the information gained would make
it worthwhile when they commit the robbery. When BATISTE stated,
"nigga hit me fifteen minutes after I told you, I said man we got
to be on point from woopwoop to woopwoop. . . . That nigga hit me
fifteen minutes after that. Say commissary - commissary here," he
was telling PHILLIPS that fifteen minutes after he admonished HILL,

13

who was doing surveillance at the Amegy Bank, to stay alert, HILL called him back to tell BATISTE that the armored car had arrived at the bank. Surveillance at the bank during this same time period verified that the arrival of the armored car coincided with HILL's call to BATISTE. When BATISTE stated, "So with that being said, uh, I mean I'm over here fucked up, [unintelligible] I ain't lying. It's just like - it's just like a - all of my other missions, man, I couldn't even, uh-man, I got to take - I got to have two shots every night, man, just to go to bed, bro," he is stating that during the planning of this robbery, not unlike the planning of all his other robberies, there is a great deal of stress involved and that he requires alcohol consumption to get to sleep at night.

27. On November 30, 2016, at approximately 2:16pm, a conversation was intercepted between BATISTE and HILL. In this conversation, HILL asked BATISTE, "What was going down?" and BATISTE stated, "I solved that problem . . . got me some - got me a towel and some uhh pliers . . . just pull - yeah put the pliers and I bent it, but it ain't it ain't you know it's stainless steel so it will show a mark on there if you've been fucking with it but that towel kept it good." Later in the conversation, BATISTE stated, "I'm fixin' to get in here and uh, get to crafting I've got to create that little - create that side panel. I - I - I cut on it last night but - just to make sure I could do it, but I'm gonna do that bitch perfect." BATISTE further stated, "what I did

14

I just bust the thing off of there and went and bought – went and bought one that just looked just like it. You know what I'm saying? And shit, went and got'em cut just right, slid'em back on there and that's it."

28.   Based upon my training, experience and knowledge of this investigation, when BATISTE says, "I solved that problem . . . got me some – got me a towel and some uhh pliers . . . just pull – yeah put the pliers and I bent it, but it ain't it ain't you know it's stainless steel so it will show a mark on there if you've been fucking with it but that towel kept it good," he was explaining his solution for the problem of being able to exchange a false key for the genuine key for the TARGET VEHICLE. When BATISTE says, "I – I – I cut on it last night but – just to make sure I could do it, but I'm gonna do that bitch perfect, what I did I just bust the thing off of there and went and bought – went and bought one that just looked just like it. You know what I'm saying? And shit, went and got'em cut just right, slid'em back on there and that's it," he is talking about experimenting with the TARGET VEHICLE to insure that he will be able to make the modifications to the vehicle that he wants to prepare it for use in the robbery.

29.   On November 30, 2016, BATISTE was observed by surveillance driving the TARGET VEHICLE as it exited the garage at 1351 Tarberry Road, Houston, Texas, BATISTE's residence, and as it

15

arrived at the Amegy Bank, 400 North Sam Houston Parkway East, where it remained for several hours.

30. On December 1, 2016, surveillance observed BATISTE and an individual with the same physical characteristics of JOHN SCOTT returning the TARGET VEHICLE as scheduled to Enterprise Rent-a-Car.

31. On December 1, 2016, in case number 4:16-MJ-1721, United States Magistrate Judge Frances H. Stacy, of the Southern District of Texas, signed an order authorizing the use of a pen register and trap and trace on 832-726-8313, a phone known to be utilized by PHILLIPS.

32. On December 2, 2016, the TARGET VEHICLE was lawfully rented by FBI agents and taken to a location where it was equipped with a camera capable of intercepting and recording visual, non-verbal conduct and activities by means of closed circuit television, as well as interception of oral communications within and in the vicinity of the TARGET VEHICLE. Additionally, a kill switch was added which would allow agents to remotely turn off the engine of the TARGET VEHICLE. An examination of the set of two keys that were received from the rental agency revealed that only one of the remote entry fobs was operational. An examination of the vehicle itself resulted in the recovery of an aftermarket tracking device located in the engine compartment which would allow the vehicle to be located by persons other than the rental agency.

33.   At approximately 6:00am on December 3, 2016, the TARGET VEHICLE was parked by FBI agents at a Doubletree Hotel, located 8181 Airport Blvd., Houston, Texas, and physical surveillance was established.   At approximately 1:00pm, the black Jeep Wrangler registered to BATISTE pulled up to the TARGET VEHICLE in the parking lot at the Doubletree Hotel, at which time a black male wearing a hooded jacket which concealed his face exited the Jeep Wrangler, and entered the TARGET VEHICLE through the use of remote access to the vehicle.   Surveillance then followed the TARGET VEHICLE and the black Jeep Wrangler back to The Meadows on Blue Bell at 1:30pm, Houston, Texas. Surveillance showed that the TARGET VEHICLE was parked in The Meadows on Blue Bell apartments parking lot and then the black Jeep Wrangler was driven back to 1351 Tarberry, BATISTE's residence.

34.   On December 3, 2016, at approximately 4:13pm, a conversation was intercepted between BATISTE and HILL. In this conversation, HILL asked BATISTE, "Were you all able to move that go cart yesterday?" BATISTE replied, "Oh yeah, shit, I'm going to go pick him up about . . . about uh, 5 or 6. You talking . . . you talking about the peckerwood color?"   HILL responded, "Yeah." BATISTE stated, "Yeah yeah yeah, he . . . he getting shined right now . . . putting a little shine to him and he gonna be done." BATISTE further stated, "Yeah, he done. Then, the uh . . . the uh, that other one been put in place, you know what I'm saying. It's

17

time to let him sit . . . let him sit and cool off man. Show he
ain't got, he ain't got nobody looking for him or nothing like
that and then you know what I'm saying. As long as they don't put
no Amber Alert out it's gonna be good right there." BATISTE then
said, "Let nephew link up with the boy, you know what I'm saying,
and that way they could come through, shoot it and boot it. You
feel me? As if whatever that way he ain't gotta be try to be
careful with his Scooby Doo van.  He could just, he could just be
in there little whip and just dip through there, you know what I'm
saying? Look how he pull up and pull out, you know what I'm saying?
And they can see where they are going to park because when he is
Scooby Doo-ish, he can't, he can't check around as good.  But they
could just do that for like an hour or two."

   35.  Based upon my training, experience and knowledge of this
investigation, when HILL asked BATISTE if he was able to "move
that go cart yesterday" and BATISTE responds affirmatively and
asks if HILL is referencing the "peckerwood color," they are
discussing getting work done on the white Toyota 4-Runner, which
is corroborated with surveillance showing BATISTE taking the
Toyota 4-Runner to an auto body shop on December 2, 2016.  When
BATISTE states, "that other one been put in place" to allow it
time to "let him sit and cool off man," he's referring to the
TARGET VEHICLE being stolen and letting the vehicle sit to make
sure law enforcement are not actively looking for the TARGET

VEHICLE. When BATISTE stated, "Let nephew link up with the boy," he is referring to POLK as nephew. When BATISTE stated, "they could come through, shoot it and boot it," he is telling HILL that POLK would be better able to maneuver the TARGET VEHICLE into a position where they could grab the money after the armored courier was shot. When BATISTE stated, "he ain't gotta be try to be careful with his Scooby Doo van. He could just, he could just be in there little whip and just dip through there, you know what I'm saying? Look how he pull up and pull out," he is telling HILL again that the TARGET VEHICLE is better than the van that POLK drives because it is more maneuverable. When BATISTE stated, "they can see where they are going to park because when he is Scooby Doo-ish, he can't, he can't check around as good," he is telling HILL that the all-around visibility from the TARGET VEHICLE is better than that of POLK's van. When BATISTE stated that, "they could just do that for like an hour or two," he is telling HILL that POLK will be less conspicuous driving the TARGET VEHICLE rather than his van.

36.  On December 5, 2016, surveillance revealed that BATISTE took the TARGET VEHICLE to an auto window tinting shop located in the 2700 block on State Highway 249.

37.  On December 6, 2016, BATISTE was observed by surveillance operating the TARGET VEHICLE as he traveled to the Amegy Bank at 400 North Sam Houston Parkway East, Houston, Texas, where he remained for several hours.

38.  On the morning of December 7, 2016, surveillance was established at the Amegy Bank at 400 North Sam Houston Freeway East, by agents and officers.  At approximately 9:30am, members of BATISTE's robbery crew began to take positions around the bank. By no later than 10:30am, the Toyota 4-Runner, occupied by POLK and DUNCAN-BUSH was in an adjacent parking lot with a clear line of sight to the bank's ATMs. At the same time, the TARGET VEHICLE, occupied by BATISTE was parked in the parking lot of an adjacent apartment complex with a clear line of sight to the bank's ATMs.

39.  At approximately 11:00am, officers and agents moved in to apprehend the robbery crew. POLK and DUNCAN-BUSH saw police and attempted to flee on foot.  The two were apprehended after a short foot chase. A semi-automatic pistol was recovered from a trash bin located along the route that POLK and DUNCAN-BUSH ran.

40.  When BATISTE saw officers approaching, he began shooting at them and officers returned fire. BATISTE was struck in the leg and in the chest and died after being removed from the scene. Recovered from the scene was a .223 caliber AR-15 with a scope.

41.  When HILL saw officers converging on his criminal confederates, he attempted to drive from the area surrounding the bank and was stopped and apprehended by officers several hundred yards from the bank.

42.  After his arrest, DUNCAN-BUSH was transported to the

Houston FBI where he was advised of his rights writing pursuant to Miranda, acknowledged those rights, and subsequently waived those rights in writing and agreed to speak with agents. According to DUNCAN-BUSH, he was introduced into the conspiracy by PHILLIPS on or about December 5, 2016. DUNCAN-BUSH stated that he was approached by PHILLIPS he told him that he had an opportunity for DUNCAN-BUSH to make some money and asked if he was interested. DUNCAN-BUSH told PHILLIPS that he was interested, after which PHILLIPS introduced him to POLK. DUNCAN-BUSH stated on December 6, 2016, PHILLIPS transported him to a meeting with POLK who was driving the Toyota 4-Runner. DUNCAN-BUSH said that POLK then drove them to the vicinity of the Amegy Bank at 400 North Sam Houston Freeway East, where they stated for a number of hours. When POLK drove them from the area of the bank, DUNCAN-BUSH stated that they went to meet with PHILLIPS, who then took DUNCAN-BUSH to the Sun Suites, at 12010 Kuykendahl Road, Houston, Texas. DUNCAN-BUSH stated that PHILLIPS gave him a key card and told him that he should go to the room corresponding with the key card and wait for them. DUNCAN-BUSH said that the next morning, December 7, 2016, he was picked up from the hotel by POLK who was driving the white Toyota 4-Runner. POLK then drove them to the area near the bank where they were eventually arrested a couple hours later.

43.   A review of the cell site information received pursuant to court order for 832-726-8313, a phone known to be utilized by

21

PHILLIPS, revealed that on December 7, 2016, that phone was in close proximity to the Amegy Bank before, during, and after the failed armed robbery.

Based on the foregoing facts, your affiant believes that probable cause exists for the issuance of a complaint and arrest warrant for Bennie Charles PHILLIPS, Jr. charging him with Conspiracy to Interfere with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951(a), and Aiding and Abetting the Use and Carrying of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c) and 2.

JEFFREY M. COUGHLIN
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 8th day of December, 2016, and I find probable cause.

DENA PALERMO
United States Magistrate Judge